NATHAN J. SMITH, *administrator, de bonis non, of* NATHANIEL
CRARY'S *Estate, v.* CALEB HALL.

*Ejectment.*

The residuary devisee consented to a sale by the executor, for the payment of debts
and specific legacies, of a portion of the testator's real estate; and, to save the ex-
pense of an order of sale from the probate court, quit-claimed the premises to the
executor individually. The defendant being in the adverse possession of a part
of the premises, an action of ejectment for the recovery of them was commenced
in the name of the estate. The deed to the executor was not recorded, but the
defendant, with knowledge of its existence, obtained from the devisee a deed to
himself of the premises in dispute, which he put upon record. Between the times
of the execution of the two deeds the premises deeded to the executor were, by a
decree of the probate court, assigned to the residuary devisee. The executor
having deceased, the action of ejectment was prosecuted in the name of the ad-
ministrator, *de bonis non,* for the benefit of the person to whom the executor had
sold. *Held,* that the title derived by the devisee under the will, and the assignment
of the probate court, enured to the benefit of the person who purchased of the
executor;—that the defendant could not defend the action on the strength of his
deed;—and that the action was not defeated by the conveyance to the executor,
the defendant being at the time in adverse possession.

EJECTMENT, tried by jury, upon the general issue, September
Term, 1855,—PIERPOINT, J., presiding.

The plaintiff gave evidence tending to prove title to the premises
described in the declaration, in Nathaniel Crary, (the testator,) at
the date of the ouster laid in the declaration, (January, 1845,) and
at the time of the said Crary's decease; and that the defendant, at
the time laid in the declaration, had entered into the actual posses-
sion of the western portion of the same, not definitely marked or
designated, and thereafter held it in his adverse possession, claim-
ing title thereto. Crary deceased in July, 1847, leaving a will,
which was admitted to probate September 14th, 1847, and John
Fox, the executor thereof, commenced the present suit March
24th, 1848. Said Fox deceased during the pendency of the
suit, and administration, *de bonis non,* was duly granted to the
plaintiff.

The defendant then introduced the will of Crary, by which he
devised to Clarissa C. Weller the rest and residue of his estate,
after the payment of debts and certain legacies; a decree of the
proper probate court, dated November 30th, 1848, assigning all
such estate to the said Clarissa C. Weller; and a quit-claim deed
of all the premises described in the declaration, executed by the

said Clarrissa to the defendant, dated June 16, 1853, and recorded June 21st, 1853.

The plaintiff then offered to prove that the said John Fox, executor, with the knowledge and consent of the said Clarissa C. Weller, on the 21st of February, 1848, bargained with one Frederick Button, by his bond, to convey to him the home farm of said Crary, and the premises described in the declaration, (the same being a part of said home farm,) for the sum of $5,950, paid by Button; and had given said Button authority to sue for and recover the premises, so in possession of the defendant, with the damages, in the name of said Fox, executor, but for the benefit of Button, said Button saving the estate and Fox harmless from all costs, expenses and damages; that the purchase money was paid by Button to Fox, executor, and was appropriated by him in paying off the debts chargeable on the estate, and the legacies and expenses of administration, and the balance paid over to the said Clarissa; and that, the said Clarissa, in order to carry out this contract of the executor, and to save the expense of an order of sale from the probate court, on the 24th of February, 1848, conveyed to the said John Fox, by a quit-claim deed of that date, but not recorded until July 14th, 1853, all her right, title and interest to said farm, including the land described in said declaration; and that the defendant, at the time he contracted with and received his deed from Mrs. Weller, knew of the said deed to John Fox, and its contents, and of the contract made with Button.

The court rejected the evidence so offered by the plaintiff, upon the ground of its being immaterial, and directed the jury that, if they believed the evidence introduced, they should return a verdict for the defendant. Exceptions by the plaintiff.

*D. Roberts* for the plaintiff.

At the date of the writ, (March 24, 1848,) the right to sue was in Fox, the executor. The suit could have been brought in no other name or mode, at that time. Comp. Stat. 341, § 10–11. Was this right defeated by what subsequently occurred?

It was the will of Crary, and not the decree of the probate court, which gave title to Mrs. Weller. Immediately upon his death, an estate in this land vested in her by the will, subject,

nevertheless, to the lien of the executor, for the payment of debts, legacies and expenses. This estate she could convey by deed. *Hyde* v. *Barney*, 17 Vt. 280; and she did convey it to John Fox, by deed, February 24, 1848. But the defendant was then in adverse possession of the land; hénce, the suit may go on in the name of Fox, executor. *Parkhurst* v. *Edwards*, 15 Vt. 618.

The decree was rather declaratory than creative of title; merely announcing that she might then take what was hers already by the will. But she had already conveyed to Fox, and is estopped by her covenant in that deed, from setting up any claim under the decree as against her deed; and so the decree has enured to the benefit of Fox. *Edwards* v. *Roys*, 18 Vt. 473; *Edwards* v. *Parkhurst*, 21 Vt. 472. But the defendant being in adverse possession, and the effect of the decree being as above stated, the suit may continue on in the name of Fox, executor, and he may recover for the benefit of the equitable owner.

The defendant can claim nothing under his deed from Mrs. Weller. The notice to him was equivalent to a record of her deed to Fox. Mrs. Weller, thereafter, as to all persons having actual or constructive notice of that deed, had no title to convey. The adverse possession of the defendant had only this effect to prevent the transfer of the *legal* title to Fox. The equitable title was conveyed, and Mrs. Weller's control of the estate gone forever. The defendant could not thereafter, and after notice, for the sake of fortifying his posession, or for any purpose, acquire any right by her deed to him. *Edwards* v. *Parkhurst*, 21 Vt. 472.

*R. R. Thrall* and *C. Linsley* for the defendant.

After the payment of all the debts and specific legacies, and the assignment of all the real estate to Clarissa Weller, the residuary legatee, the title to the property was in her; and the suit, though in the name of the administrator, was for her sole benefit, and it was competent for her to sell it, and thereby to discharge the plaintiff's right to recover.

The contract made by the executor, with Button, on the 21st of February, 1848, before he had obtained an order of sale, was void, being against the policy of the law, which required him to be under oath after he had obtained his license to sell it to the best ad-

vantage, &c. The authority given by Fox to Button, authorising Button to prosecute Hall, in the name of Fox, for Button's benefit, and at his cost, was also against law, a species of champerty or maintenance which should not be encouraged. All the proceedings under that contract were void, as against the policy of the law.

The quit-claim deed executed by Mrs. Weller to John Fox, of the 24th of February, 1848, before the assignment to her by the probate court, conveyed nothing, as she had no title to convey.

The deed from Mrs. Weller to John Fox, of the 24th of February, 1848, while Caleb Hall was in the adverse possession of the land, was void, in any event, so far as that land was concerned. If the deed was void, it was immaterial whether the defendant knew of its existence or not.

The opinion of the court was delivered, at the circuit session in June, by

BENNETT, J. This is an action of ejectment, and the declaration counts upon a seisin and ouster in the life-time of Crary. The premises in dispute are a part of what was called the home farm of Crary; and, at the trial, the defendant attempted to stand upon the title of Crary, as derived from his daughter; and the only question is, which has the best right? For the plaintiff it is to be assumed, upon the exceptions, that Crary had a valid title to the premises; and that the defendant was in possession, adverse to Crary, though upon the trial he did not rely upon his adverse possession.

The defendant, on trial, claimed title under Clarissa C. Weller, the daughter of Mr. Crary.

By the will of her father, Clarissa was made the residuary devisee and legatee; and it seems that for some cause which is not very apparent, the court of probate, on the 30th of November, 1848, passed a decree assigning the whole of the home farm to the daughter Clarissa; and on the 16th day of June, 1853, she gave a quit-claim deed of that part of the home farm now in dispute, to the defendant; supposed to be some twenty-five acres; and this deed was recorded on the 23d day of the same month.

The plaintiff proposed to show that John Fox, then the executor of the will, by the consent of Clarissa on the 21st of February,

1848, and before the assignment had been made to her, bargained and sold the whole of the home farm of the deceased, to a Mr, Button for nearly six thousand dollars; and that he had paid the price to Fox which he applied to the payment of the debts of the testate, the specific legacies and the expenses of the settlement of the estate; and that he had paid the balance of what remained to Clarissa; and that she, to save expense of getting an order of sale from the probate court, and to carry out the arrangement made between Fox, the executor, and Button, only three days after this arrangement was made, quit-claimed to John Fox all title to every part of the home farm. This deed bears date the 24th of February, 1848, though not recorded until the 14th day of July, 1853; and that the defendant, when he purchased and took his deed from Clarissa of the 25 acres, on the 16th day of June, 1853, had full notice of this deed to Fox. This action is prosecuted by Button, in the name of the administrator, *de bonis non,* for his own benefit, in pursuance of an arrangement between him and Fox, made no doubt on account of the adverse possession set up by the defendant to the 25 acres of the home farm, in the life-time of Mr. Crary.

The whole of this evidence was considered immaterial by the county court as having no effect upon the title set up by the defendant under Clarissa, and was excluded.

We are to inquire whether there was error in this; and also in the court's directing a verdict for the defendant. Under the laws of this state, real estate becomes assets in the hands of the administrator or executor for the payment of debts; and, *sub modo,* passes to them, and their rights are, for the time being, paramount to the rights of the heirs or devisees, though they have but a trust interest; and the statute expressly enacts that no action of ejectment or other action to recover the seizin and possession of any lands, or for any damage done to such lands, shall be maintained by any heir or devisee, until there shall be a decree of the probate court, assigning such lands to such heir or devisee, or the time allowed for paying debts shall have expired, unless the administrator or executor shall voluntarily surrender the possession to the heir or devisee. In the present case, the purposes for which the real estate of the deceased became, *sub modo,* assets in the hands of the executor, had not been answered, in point of fact, and the object of

the arrangement for a sale to Button was for the payment of the debts, &c. The sale to Button was by the consent of Clarissa, and enured to her benefit; and, to carry out the arrangement, she quit-claimed all her title to the home farm to Fox.

We think it is quite clear that the defendant cannot defend the action upon the strength of his deed from Clarissa. She having consented to the sale, by the executor, to Button, and having, also, confirmed the same by her deed to the executor, she would be concluded from setting up a title in herself, adverse to the rights of Fox, and of Button; and, as the defendant had notice of the deed from Clarissa to the executor, when she conveyed to him, he can stand in no better situation, in this respect, than Clarissa would, and is equally concluded from claiming under that deed. He is chargeable with having acted in bad faith. If Clarissa had gained a legal title to the home farm, by force of the will, and the effect of the assignment of it by the probate court, it would enure to the benefit of Fox, at law, though in trust, by means of estoppel, and, in equity, to the benefit of Button. The question then arises, is the present action defeated by means of the deed from Clarissa to Fox? We think not. As the case shows that the defendant was in adverse possession, at the time of the death of Mr. Crary, and this, we are to presume, was continued up to the time Clarissa deeded to Fox, that deed would not have the effect to convey the legal title to Fox, as against the defendant; and though the defendant did not, upon the trial, insist upon his adverse possession, yet we think it was competent for the plaintiff to prove the adverse possession, in order to show that the action could still be maintained by the representative of the estate of Nathaniel Crary. For the purposes of this hearing, we are to take whatever the testimony tended to prove, as proved, as well as what was offered to be proved.

By our statute, Comp. Stat., chap. 50, § 16, the present administrator has the same power, and may proceed in the same way, in settling the estate, as the executor, Fox, could have done; and, if Fox, the executor, in his life-time, could have maintained this action, it may well be maintained by the administrator, *de bonis non*, though a recovery may enure to the benefit of Button.

Judgment of the county court reversed, and the cause remanded.